# EXHIBIT A

 CT Corporation

**Service of Process Transmittal**
01/03/2022
CT Log Number 540818155

**TO:**      Kevin Guy
           Graham Waste Services
           1093 N MONTELLO ST
           BROCKTON, MA 02301-1600

**RE:**      **Process Served in Massachusetts**

**FOR:**     Graham Waste Services, Inc.  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Re: JAMES M. QUIGLEY // To: Graham Waste Services, Inc. |
| **DOCUMENT(S) SERVED:** | -- |
| **COURT/AGENCY:** | None Specified<br>Case # 2183CV00926 |
| **NATURE OF ACTION:** | Employee Litigation |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Boston, MA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 01/03/2022 at 11:00 |
| **JURISDICTION SERVED :** | Massachusetts |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  UPS Next Day Air , 1ZX212780137967159 |
| **REGISTERED AGENT ADDRESS:** | C T Corporation System<br>155 Federal Street<br>Suite 700<br>Boston, MA 02110<br>877-467-3525<br>SmallBusinessTeam@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



# PROCESS SERVER DELIVERY DETAILS

**Date:**                    Mon, Jan 3, 2022

**Server Name:**             Drop Service

| | |
|---|---|
| Entity Served | GRAHAM WASTE SERVICES, INC. |
| Case Number | 2183CV00926 |
| Jurisdiction | MA |



| Summons | CIVIL DOCKET NO.<br>2183CV00926 | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|

| CASE NAME: | |
|---|---|
| *James Quigley*     Plaintiff(s)<br>vs.<br>*Graham Waste Services Inc, et al.*     Defendant(s) | Clerk of Courts<br>County<br><br>COURT NAME & ADDRESS:<br>*Plymouth County Superior Court*<br>*72 Belmont St.*<br>*Brockton, MA 02301* |

THIS SUMMONS IS DIRECTED TO *Thomas Ferro* (Defendant's name)

<u>You are being sued.</u> The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the *Plymouth Superior* Court.

**YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **<u>You must respond to this lawsuit in writing within 20 days.</u>**

If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. **How to Respond.**

To respond to this lawsuit, you must file a written to response with the court <u>and</u> mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

a) Filing your **signed original** response with the Clerk's Office for Civil Business, *Plymouth Superior* Court *72 Belmont St, Brockton, MA 02301* (address), by mail or in person **AND**

b) Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address: *Emily Smith-Lee, 46 South Main St, Sharon, MA 02067*

3. **What to Include in Your Response.**

An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses. must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your court no more than 10 days after sending your Answer.

A true copy Attest:
*1-2-22* Deputy Sheriff Suffolk County

| CIVIL TRACKING ORDER (STANDING ORDER 1- 88) | DOCKET NUMBER 2183CV00926 | Trial Court of Massachusetts The Superior Court |
|---|---|---|

| CASE NAME: Quigley, James vs. Graham Waste Services Inc et al | Robert S. Creedon, Jr., Clerk of Courts |
|---|---|
| TO: Graham Waste Services Inc 1093 North Montello Street Brockton, MA 02301 | COURT NAME & ADDRESS Plymouth County Superior Court - Brockton 72 Belmont Street Brockton, MA 02301 |

### TRACKING ORDER - F - Fast Track

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

| STAGES OF LITIGATION | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | | 02/22/2022 | |
| Response to the complaint filed (also see MRCP 12) | | 03/22/2022 | |
| All motions under MRCP 12, 19, and 20 | 03/22/2022 | 04/21/2022 | 05/23/2022 |
| All motions under MRCP 15 | 03/22/2022 | 04/21/2022 | 05/23/2022 |
| All discovery requests **and depositions** served and non-expert depositions completed | 09/19/2022 | | |
| All motions under MRCP 56 | 10/18/2022 | 11/17/2022 | |
| Final pre-trial conference held and/or firm trial date set | | | 03/17/2023 |
| Case shall be resolved and judgment shall issue by | | | 11/22/2023 |

**The final pre-trial deadline is <u>not the scheduled date of the conference</u>.** You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to

| DATE ISSUED 11/22/2021 | ASSISTANT CLERK | PHONE |
|---|---|---|

Date/Time Printed: 11-22-2021 14:37:54                                                                                   SCV026- 08/2018

**RECEIVED**                         11/22/2021

COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, SS                                  SUPERIOR COURT DEPARTMENT
                                              CIVIL ACTION NO.:

```
_____
                           )
JAMES M. QUIGLEY           )
        Plaintiff          )
                           )
v.                         )
                           )
GRAHAM WASTE SERVICES, INC. and )
THOMAS FERRO,              )
        Defendants         )
_____)
```

## COMPLAINT

Plaintiff, James M. Quigley, by and through counsel, alleges as follows:

## PARTIES

1. Plaintiff James Quigley is an adult resident of Taunton, MA.

2. Defendant Graham Waste Services, Inc. is a Delaware corporation with a principal

   place of business at 1093 North Montello Street, Brockton MA. .

3. Defendant Thomas Ferro is an adult resident of Garden City, New York, and at all

   relevant times was President of Defendant Graham Waste Services.

4. Defendant Graham Waste Services, Inc. was an employer of the Plaintiff for the

   purposes of the Fair Labor Standards Act ("FLSA") and the Massachusetts Wage Act

   ("Wage Act"). *See* 29 U.S.C. § 203 (d); G.L. c. 149, § 150.

5. As President, Defendant Ferro was an officer of the company and was responsible for

   decisions regarding compensation of employees, including Mr. Quigley.

6. Defendant Ferro was Plaintiff's employer within the meaning of the FLSA and the

   Massachusetts Overtime Law. *See* 29 U.S.C. § 203 (d); G.L. c. 151, § 1B.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to G.L. c. 212, § 3.

8. This Court has personal jurisdiction over Defendant Graham Waste Services because it maintains a principal place of business within the Commonwealth, it employed Plaintiff to work as its agent in the Commonwealth; and the acts and omissions giving rise to this Complaint occurred in the Commonwealth.

9. This Court has personal jurisdiction over Defendant Ferro because Mr. Ferro is actively involved as President of the company within the Commonwealth, employed Plaintiff to work as the company's agent in the Commonwealth, and because the acts and omissions giving rise to this Complaint, in which Defendant Ferro personally participated, occurred in the Commonwealth.

10. Venue is proper in this Court pursuant to G.L. c. 223, § 2, because Defendant Graham Waste Services, Inc. has a principal place of business in this judicial district.

## FACTUAL ALLEGATIONS

11. Mr. Quigley began employment with Graham Waste Services in 2013 as a driver.

12. In July 2018, Mr. Quigley was promoted to dispatcher.

13. As dispatcher, Mr. Quigley reported to the Director of Operations, originally David Burke and later Katie Merlini.

14. At all relevant times, there were at least four people above Mr. Quigley in the reporting chain, and five between July 2018 and March 2019.

15. Mr. Quigley's job duties as dispatcher included coordinating logistics for delivery and pickup of dumpsters to and from customer locations.

16. The drivers who delivered and picked up dumpsters also reported to Ms. Merlini.

2

17. Mr. Quigley would schedule deliveries and pickups based on general guidance from his supervisors about prioritization and/or specific instructions noted by the sales team on the orders.

18. Mr. Quigley did not make scheduling decisions outside of the above parameters.

19. The drivers did not report their time to Mr. Quigley but recorded it electronically.

20. Mr. Quigley was sometimes informed by his supervisors what drivers should not be scheduled based on the potential for overtime pay for those drivers, but he was never responsible for approving any driver's overtime hours or making the decision not to schedule them based on their hours to date.

21. Ms. Merlini or her predecessor, Dave Burke, were responsible for approving timecards and overtime.

22. Mr. Quigley was not involved with hiring or firing employees at Graham Waste.

23. There were individuals terminated from the company during Mr. Quigley's tenure, but he was not involved in the decisions, nor was he consulted by management about the decisions.

24. Mr. Quigley was also not involved in hiring decisions.

25. A member of management, Tom Farrell, along with Ms. Merlini or her predecessor, Dave Burke, were responsible for interviewing candidates.

26. These individuals would also make the hiring decisions and instruct the new drivers who they would be driving with.

27. Mr. Quigley was asked to track and monitor certain information about drivers, including their GPS information, but it was always Mr. Farrell or Ms. Merlini who would determine if there was a problem and speak to the driver involved.

28. Mr. Quigley did not conduct performance reviews for any employee of the company.

29. Mr. Quigley did not administer or recommend discipline for any employee of the company.

30. Between July 2018 and July 2020, Mr. Quigley worked Monday through Friday, and most Saturdays.

31. During this time period, Mr. Quigley, who is 54 years old, worked on average 65 hours per week.

32. In July 2020, Mr. Quigley was hospitalized.  Following his hospitalization, he presented a note from his doctor indicating that for medical reasons, Mr. Quigley should not work in excess of 45 hours a week.

33. The response from the company was to state that for a limited time, another employee could provide some coverage of Mr. Quigley's duties, but emphasized in the email communication that this "is not a permanent solution."

34. The company temporarily accommodated that request, and Mr. Quigley's hours were reduced for two months.

35. Even at reduced hours, he was putting in at least 50 hours per week between July 2020 and November 2020, when his compensation was converted to an hourly wage.

36. In October, 2020, the President of Graham Waste, Thomas Ferro, inquired about the status of Mr. Quigley's health, and stated that if Mr. Quigley was not able to return to his prior schedule, he would have to take a 40% cut in his pay.

37. Mr. Quigley gave this serious consideration, and ultimately decided to agree to go back to work on his prior schedule.  Though this was still against doctor's orders,

and posed a real risk to his health, he could not accept a 40% pay cut for what had been a decrease of approximately 20% in his working time.

38. However, when he indicated his acceptance two days later, he was told that option was no longer on the table.

39. During this time period, Mr. Quigley was warned by a few individuals that the company was looking for any reason to terminate him.

40. Prior to submitting the medical note, Mr. Quigley had no complaints against him and no disciplinary record.

41. He was also given an increase in compensation in 2019.

42. The individual who was brought in to assist when Mr. Quigley first presented his medical note is under 40 years of age.

43. On information and belief, the individual who was brought in to assist was being trained and groomed to eventually take over all of Mr. Quigley's responsibilities.

44. Mr. Quigley continued to work on the reduced hours and for the compensation described above until April, 2021.

45. In March, 2021, Mr. Quigley filed a complaint of discrimination and retaliation with the Massachusetts Commission Against Discrimination ("MCAD").

46. On or about April 14, 2021, Mr. Quigley's employment with Graham Waste was terminated.

47. After a change in management, Mr. Quigley was re-hired in August, 2021.

48. On or about June 25, 2021, Mr. Quigley withdrew his complaint from the MCAD in order to file a civil suit.

## COUNT ONE
### Violation of M.G.L. c. 151B and 42 U.S.C. §§ 12112– Disability and/or Perceived Disability Discrimination

49. Plaintiff reasserts and re-alleges the allegations in the preceding paragraphs as if fully set forth herein.

50. In July 2020, Mr. Quigley was suffering from a medical condition that precluded him at that point from working the hours per week that he had previously worked.

51. Though Defendant initially provided an accommodation, it did so grudgingly, and would not agree to continue that accommodation without a substantial and disproportionate reduction in Mr. Quigley's pay.

52. When Mr. Quigley indicated that he could return to his prior schedule, Defendant stated that offer was no longer on the table and required him to continue to work at reduced pay.

53. On information and belief, the refusal to reinstate Mr. Quigley to his prior position and compensation was motivated by animus toward him for requesting an accommodation in the first place, and/or a perception that he continued to be restricted by a disability.

54. By reducing his compensation unilaterally, Defendant changed the terms and conditions of Mr. Quigley's employment, and such reduction constitutes an adverse employment action under Chapter 151B.

55. As a result of Defendant's discriminatory conduct, Plaintiff has suffered and continues to suffer harm.

## COUNT TWO
### Violation of M.G.L. c. 151B and 42 U.S.C. §§ 12112– Retaliation

56. Plaintiff reasserts and re-alleges the allegations in the preceding paragraphs as if fully set forth herein.

57. On information and belief, the refusal to reinstate Mr. Quigley to his prior position and compensation was done in retaliation for his original request for an accommodation.

58. On information and belief, the termination of Mr. Quigley's employment less than two months after his filing of a complaint with the MCAD was retaliatory in nature.

59. By reducing his compensation unilaterally, Defendant changed the terms and conditions of Mr. Quigley's employment, and such reduction constitutes an adverse employment action under Chapter 151B.

60. The subsequent termination of Mr. Quigley's employment also constitutes an adverse employment action under Chapter 151B.

61. As a result of Defendant's retaliatory conduct, Plaintiff has suffered and continues to suffer harm.

## COUNT THREE
### Violation of M.G.L. c. 151B and the Age Discrimination in Employment Act ("ADEA")– Age Discrimination

62. Plaintiff reasserts and re-alleges the allegations in the preceding paragraphs as if fully set forth herein.

63. As an individual over the age of 40, Mr. Quigley is protected under state and federal law.

64. Since the summer of 2020, a portion of Mr. Quigley's job responsibilities have been taken over by an individual under the age of 40.

65. Mr. Quigley suffered adverse employment action in the form of a unilateral and disproportionate reduction in his compensation in 2020, and his ultimate termination in April 2021.

66. On information and belief, Defendant's conduct with respect to Mr. Quigley as alleged herein was motivated by discrimination based up his age, exacerbated by his report of medical issues in July 2020 and his filing of a complaint with MCAD in March 2021.

67. As a result of Defendant's discriminatory conduct, Plaintiff has suffered and continues to suffer harm.

## COUNT FOUR
### Failure to Pay Overtime in Violation of G.L. c. 151B, §1B

68. Plaintiff re-alleges and reasserts the allegations in all of the preceding paragraphs as if fully set forth herein.

69. Any employer or the officer or agent of any corporation who pays or agrees to pay to any employee less than the overtime rate of compensation required under Chapter 151B is liable to the aggrieved employee for all unpaid amounts, liquidated damages, and the employee's costs and legal fees.  Mass. Gen. Laws Ann. ch. 151, § 1B.

70. By their conduct of as alleged herein, Defendants have violated Chapter 151B and caused Plaintiff harm.

## COUNT FIVE
### Failure to Pay Overtime in Violation of the FLSA

71. Plaintiff re-alleges and re-asserts all of the allegations contained in the preceding paragraphs as if fully set forth herein.

72. The federal Fair Labor Standards Act (FLSA) requires payment of time and a half for

    all hours over 40 worked in a week by a non-exempt employee.

73. By their conduct of as alleged herein, Defendants have violated the FLSA and caused

    Plaintiff harm.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff claims:

1. Damages in an amount to be determined at trial;

2. Statutory treble damages for all unpaid wages and commissions due to
   Plaintiff;

3. Statutory interest at the rate of twelve percent (12%);

4. Attorney's fees and costs; and

5. Such other legal or equitable relief as the Court may award.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,
JAMES M.QUIGLEY
By counsel:

Emily  Smith-Lee (BBO#634223)
esmithlee@slnlaw.com
Slnlaw llc
46 South Main Street
Sharon, MA 02067
Tel: 781-784-2322
Fax: 781-328-1772

Dated: November 22, 2021

9